## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL OSEI, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO.  10-2042 - CDJ |
| | : | |
| v. | : | |
| | : | |
| TEMPLE UNIVERSITY – OF THE | : | |
| COMMONWEALTH SYSTEM OF | : | |
| HIGHER EDUCATION, ET AL., | : | |
| | : | |
| Defendants. | : | |

## ORDER DISMISSING PLAINTIFF'S COMPLAINT WITH PREJUDICE

**AND NOW**, this _____ day of _____, 2010, upon consideration of the Motion

of Temple University -- Of The Commonwealth System of Higher Education, Dr. Mia

Luehrmann, Ms. Andrea C. Seiss, Dr. Robert J. Levis, and Dr. Grant Krow (collectively

"Temple") to Dismiss Plaintiff Michael Osei's Complaint, and Plaintiff's Opposition thereto, is it

hereby **ORDERED** that:

Temple's Motion to Dismiss Plaintiff Michael Osei's Complaint is hereby **GRANTED**

and Plaintiff's Complaint is hereby **DISMISSED**, with prejudice.


BY THE COURT:


_____
The Honorable C. Darnell Jones
USDC Judge

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL OSEI, | : | |
| Plaintiff, | : | CIVIL ACTION NO.  10-2042 - CDJ |
| | : | |
| v. | : | |
| | : | |
| TEMPLE UNIVERSITY – OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION, ET AL., | : | |
| Defendants. | : | |

## TEMPLE'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Temple

University -- Of The Commonwealth System of Higher Education, Dr. Mia Luehrmann, Ms.

Andrea C. Seiss, Dr. Robert J. Levis, and Dr. Grant Krow hereby move this Court to dismiss the

Complaint of Plaintiff Michael Osei for the reasons set forth in the accompanying memorandum

of law.

Dated:  June 1, 2010                     Respectfully Submitted,

By: _____
     Michael J. Fortunato, Esquire
     Edward J. Heffernan, Esquire
     RUBIN, FORTUNATO & HARBISON, P.C.
     10 South Leopard Road
     Paoli, PA  19301
     (610) 408-2005/2021 / (610) 408-1869 (facsimile)
     mfortunato@rubinfortunato.com
     eheffernan@rubinfortunato.com

     Attorneys for Defendants:
     Temple University; Dr. Mia Luehrmann;
     Ms. Andrea C. Seiss; Dr. Robert J. Levis; and
     Dr. Grant Krow.

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL OSEI, | : | |
| Plaintiff, | : | CIVIL ACTION NO.  10-2042 - CDJ |
| | : | |
| v. | : | |
| | : | |
| TEMPLE UNIVERSITY – OF THE | : | |
| COMMONWEALTH SYSTEM OF | : | |
| HIGHER EDUCATION, ET AL., | : | |
| | : | |
| Defendants. | : | |

TEMPLE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

## I.   INTRODUCTION

Plaintiff Michael Osei ("Osei") sent emails to his Organic Chemistry Professor, Dr. Grant

Krow, that contained the following threats:

> *If my final grade was not a genuine and fair grade . . . it will be a
> curse against your life and family forever.  I am serious!*
>
> *I just want justice on you physically and spiritually.   Your game is
> over!  Mine begins.  You played with the wrong person this time.
> Cooperate to prevent things from escalating.*

(Compl., Exs. A.8, A.9).  The emails resulted in a referral to the Student Conduct Board

("SCB").  After a hearing, in accordance with Temple's *Student Conduct Code Procedures*,

Temple suspended Osei for a semester (until August 15, 2010) for violating section 3 of its

*Student Conduct Code,* which prohibits acts or threats of intimidation or physical violence.

(Compl. at ¶41, Ex. B.4).  Osei, displeased with his suspension, filed the instant action on May 5,

2010.[1] Although it is difficult to discern the types of claims set forth in the Complaint, Osei appears to allege federal causes of action based upon purported violations of the First, Sixth, and Fourteenth Amendments and 42. U.S.C. §1983 (hereinafter "section 1983").[2]

Osei's Complaint, however, fails to support any cause of action against Temple upon which relief could be granted under either the First, Sixth, or Fourteenth Amendments or section 1983. Osei cannot establish that Temple violated his constitutionally protected right to free speech and due process or any other federally protected civil right. With the federal issues removed from this case, what remains of Osei's allegations are shapeless state law claims of breach of contract and tort. Absent any federal interest, this Court should not exercise supplemental jurisdiction over Osei's remaining state law claims and should dismiss the matter in its entirety.

## II.     STATEMENT OF OSEI'S ALLEGED FACTS[3]

### A.     Osei Threatens Dr. Krow.

Osei enrolled in Dr. Krow's Organic Chemistry class in the Fall 2009. (Compl. at ¶ 6). Osei challenged his Organic Chemistry grade, a "C," and Dr. Krow's teaching methodology by sending Dr. Krow, and other students in Dr. Krow's Organic Chemistry class, a series of emails in late December 2009. (Compl. at ¶¶ 9, 10, Exs. A.1-A.9). Dr. Krow reported the emails to

---

[1]       Osei originally filed a *Petition for Review* in the Commonwealth Court of Pennsylvania on April 13, 2010. On April 21, 2010, however, the Commonwealth Court dismissed the action and transferred the matter to the Philadelphia Court of Common Pleas because it lacked jurisdiction over the matter. Osei subsequently withdrew that action and filed the instant action in the Eastern District of Pennsylvania.

[2]       Osei's Complaint refers to "Discrimination by race, national origin, bias, prejudice." For the purposes of this memorandum of law only, Temple will assume that by including this "count," Osei intended to plead a section 1983 claim in violation of the Equal Protection Clause of the Fourteenth Amendment.

[3]       Although many of the facts alleged in the Complaint are strongly disputed by Temple, for purposes of this Motion to Dismiss under Rule 12(b)(1) and 12(b)(6) only, the material allegations of the Complaint will be accepted as true. See Section II.A, *infra* (setting forth the legal standards for motions to dismiss complaints).

Temple's Police Department and Dr. Robert J. Levis, Chairperson of Temple's Chemistry

Department. (Compl. at ¶ 13). On December 23, 2009, Temple Detective Agoi Ombima,

instructed Osei to stop communicating with Dr. Krow and further advised him that Dr. Levis

would contact Osei to address Osei's concerns about Dr. Krow. (Compl. at ¶ 6).

**B.** **Temple's Discipline Committee Affords Osei Due Process.**

*1.* *Temple Sends Osei A Notice Of The Charges Pending Against Him And Conducts A Pre-hearing Conference.*

After reviewing the emails Osei sent to Dr. Krow, on January 12, 2010, the Student

Conduct Board sent Osei an email notifying him that he has "been charged with violating the

Temple University *[Student] Conduct Code*." (Compl. at ¶ 23, Exs. B.1, B.2). The Conduct

Board administrator attached to the email a formal "Notice of Disciplinary Action" letter dated

January 8, 2010. (Id.). The attached January 8 notice letter contained: (1) the specific *Student*

*Conduct Code* section Osei was charged with violating;[4] (2) specific details regarding the

threatening emails that he sent to Dr. Krow, including a quotation from his December 22, 2009

email;[5] and (3) a notification that Osei was responsible for scheduling and attending a pre-

hearing meeting. (Compl., Ex. B.2).

The January 8 notice letter explained in detail the informative purpose of the pre-hearing

meeting and that the meeting was intended to assist students in understanding the disciplinary

hearing process. (Id.). The January 8 notice letter also advised Osei that he was permitted to

have an advisor (attorney) present at the pre-hearing meeting. (Id.). On January 14, Osei

---

[4]    "[Section] 3. Any act or threat of intimidation or physical violence toward another person . . . ."

[5]    "[T]his grade was intentional and unfair . . . I want justice on you physically and spiritually. Your game is over! Mine begins. You played with the wrong person this time. Cooperate to prevent things from escalating."

3

completed a pre-hearing session with Dennesha Brown, SCB Program Coordinator.  (Compl. at ¶ 27).

> ### 2.    Temple Sends Osei Notice Of The Hearing.

On January 28, Temple sent Osei a "Notice of Hearing" scheduling the Conduct Board hearing for February 3, 2010.  (Compl. at ¶ 28, Ex. B.3).  The Notice of Hearing advised Osei that Professor Keith Gumery (English Dept.) would chair the hearing and that Temple intended to call the following witnesses: (1) Professor Krow; (2) Professor Levis; and (3) Detective Ombima.  (Id.).  The Notice of Hearing again advised Osei that he was permitted to have an advisor (attorney) present at the hearing.  (Compl., Ex. B.3).  On February 2, 2010, Brian Foley, Conduct Board Program Coordinator, notified Osei that Temple also intended to call Dr. Luehrmann, Dean for Undergraduate Studies for the College of Science and Technology ("CST"), as witness at the hearing.  (Compl. at ¶ 29).  On February 3, 2010, prior to the hearing, Mr. Foley presented Osei with two additional emails that Temple planned to present as exhibits.  (Compl. at ¶ 31, Ex. A.8).[6]

> ### 3.    Temple Affords Osei An Opportunity To Be Heard At The February 3 Hearing.

Temple allowed Osei to testify "openly" and to "orally defend himself" at the February 3 SCB hearing.  (Compl. at ¶ 35).  Osei admits that he openly apologized twice, but only for Dr. Krow's misunderstanding of the emails, and not for his own actions.  (Id.).  Drs. Levis and Dr. Luehrmann testified against Osei.  (Compl. at ¶ 33).  Detective Ombina testified that the emails were open to interpretation and that Dr. Krow may have misconstrued Osei's intent.  (Compl. at ¶ 34).  Dr. Krow did not participate in the hearing.  (Compl. at ¶ 32).  At the conclusion of the

---

[6]    In ¶ 31 of the Complaint, Osei refers to Ex. A.10 as one of the emails Mr. Foley presented to Osei on February 3, the email, however, was not attached to the Complaint.

hearing, Dr. Gumery thanked Osei for his apologies, but Osei ultimately was found responsible

for violating section 3 of the *Student Conduct Code*. (Compl. at ¶ 36). *Student Conduct Code*

        4.     *Temple Considers Aggravating And Mitigating Circumstances To Determine An Appropriate Sanction.*

To mitigate the severity of Osei's breach of the *Student Conduct Code*, Temple permitted

him to furnish three letters of recommendation/good character from the pastor of his church and

two additional Temple faculty members. (Compl. at ¶ 39). Also, with advice and guidance from

Ms. Andrea C. Seiss, Senior Associate Dean of Students, and Mr. Foley (both Conduct Board

administrators), Professor Gumery allowed Dr. Luehrmann to recommend an appropriate

sanction. (Compl. at ¶ 37). Dr. Luehrmann recommended dismissal based on "[Osei's] pattern

of intimidat[ing] . . . five Chemistry faculty plus an additional faculty member who witnessed

one of these incidents . . . three Math faculty and one Physics faculty." (Compl. at ¶¶ 38, 54,

55). Dr. Luehrmann then explained her investigation of Osei's current and prior threats to CST

faculty and why dismissal is the appropriate sanction. (Id.).

        5.     *Temple Sends Osei Notice Of Its Finding of Responsibility And Sanctions.*

On February 8, 2010, Ms. Seiss notified Osei of Temple's finding of responsibility and

sanctions. (Compl. at ¶ 41, Ex. B.4). Temple found Osei responsible for violating section 3 of

the *Student Conduct Code*:

      [A]ny act or threat of intimidation or physical violence toward
      another person including actual assault or battery.

(Id.). As a result, Temple imposed the following sanctions: (1) University Suspension, effective

immediately, lasting through August 15, 2010; (2) CERT Track I (anger management classes);

and (3) probation, effective immediately, lasting through graduation. (Id.). Ms. Seiss's February

8 letter, also notified Osei of his right to appeal Temple's finding of responsibility. (Id.).

Temple allows students to make appeals on two grounds: (1) procedural defects that substantively prevented the accused from obtaining a full and fair hearing on the merits; or (2) the availability of new evidence. (Compl., Ex.B.5). Temple advised Osei that February 15 was the deadline to file an appeal of its finding. (Id.).

> 6.    *Osei Appeals The Finding Of Responsibility.*

Prior to the February 15 deadline, Osei appealed Temple's finding. (Compl. at ¶ 41). On March 12, Ms. Seiss notified Osei that the Appellate Board *unanimously* voted to uphold the original board's finding of responsibility and sanctions. (Compl. at ¶ 44).

## C.    Osei's Concurrent Grade Grievance And Appeals.

While the SCB proceedings detailed above were pending against Osei, he pursued his academic grievance concerning his Organic Chemistry grade, a "C," and Dr. Krow generally. On December 24, 2009, Osei contacted Joshua Purcelli, CST Student Ambassador, about filing a formal grievance concerning Dr. Krow. (Compl. at ¶ 18). On January 7, 2010, Osei met with Dr. Levis and Dr. Daniel Stongin, Vice Chairperson of the Chemistry Department, to address Osei's grade grievance. (Compl. at ¶ 19). On January 10, 2010, Osei then complained to Dr. Luehrmann about Dr. Krow and made her aware of his intention to file a "joint grievance" on behalf of other students in Dr. Krow's Organic Chemistry class. (Compl. at ¶ 20).

On March 3, Mr. Purcelli, informed Osei that the CST Undergraduate Grievance Committee ("CST-UGC") decided *unanimously* that his grade in Organic Chemistry was appropriate and did not recommend a change. (Compl., Ex. C). With respect to the "joint grievance" that Osei attempted to levy against Dr. Krow, Mr. Purcelli informed Osei that "as far as the college is concerned, there is no group or joint grievance" and that those students would have to individually file grievances. (Id.). Osei again appealed his Organic Chemistry grade to

the CST-UGC. (Id.). The CST-UGC upheld its decision and advised Osei that he could address

any alleged procedural defects with the Vice Provost of Undergraduate Studies, Dr. Richard

Englert. (Id.). On April 6, Osei appealed the CST-UGC's decision to uphold the grade to Dr.

Englert. (Compl. at ¶ 51). Dr. Englert responded on April 12. (Id.). He upheld the original

Organic Chemistry grade and notified Osei that all internal remedies and appeals within Temple,

with respect to his grade grievance, were now exhausted. (Id.).

## III.   LEGAL ARGUMENT

### A.   Standard For A Motion To Dismiss Pursuant To Federal Rule Of Civil Procedure 12(b)(6).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a

complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Fed.

R. Civ. P. 12(b)(6). Dismissal is appropriate only if, accepting as true all the facts alleged in the

complaint, Plaintiff has not averred "enough facts to state a claim to relief that is plausible on its

face," meaning, enough factual allegations "to raise a reasonable expectation that discovery will

reveal evidence of" each necessary element of each claim. Bell Atlantic Corp. v. Twombly, 550

U.S. 544, 555 (2007); Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008); see

also Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (requiring complaint to set forth

information from which each element of a claim may be inferred). In considering a motion to

dismiss, all allegations must taken as true and construed in a light most favorable to the non-

moving party. Ca. Pub. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir.

2004); Saylor v. Ridge, 989 F. Supp. 680, 684 (E.D. Pa. 1998). A court, however, does not have

to accept or give credit to "bald assertions," "legal conclusions," "unsupported conclusions,"

"unwarranted inferences," "unwarranted deductions," "footless conclusions of law," or

7

"sweeping legal conclusions cast in the form of factual conclusions." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 n.8 (3d Cir. 1997).

In this case, Osei's Complaint must be dismissed because, even when viewing the allegations in a light most favorable to Osei, the Complaint fails to set forth any facts that could legally provide Osei with relief from Temple.

**B.    Osei Failed To Plead A Viable Claim Under The Fourteenth Amendment Because Temple Afforded Osei Due Process.**

Plaintiff appears to bring claims against Temple under 42 U.S.C. § 1983, which protects the rights of individuals to be free from violations of their due process under the Fourteenth Amendment. Zinermon v. Burch, 494 U.S. 113, 125 (1990); Higgins v. Beyer, 293 F.3d 683, 694 (3d Cir. 2002). "The essential principle of procedural due process is that a deprivation of life, liberty or property should be preceded by 'notice and opportunity for a hearing appropriate to the nature of the case.'" Ballas v. City of Reading, No. Civ.A.00-CV-2943, 2001 U.S. Dist. LEXIS 657 at *7 (E.D. Pa. Jan. 25, 2001) (citations omitted). Section 1983 does not itself create any substantive rights. It simply provides a remedy for vindicating rights established under the Constitution or laws of the United States. Albright v. Oliver, 510 U.S. 266, 271 (1994).

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV § 1. The constitutional provision has both a procedural and a substantive component. Nicholas v. Pa. State Univ., 227 F.3d 133, 139 (3d Cir. 2000), citing, Planned Parenthood of S.E. Pennsylvania v. Casey, 505 U.S. 833, 846-47 (1992). Osei cannot demonstrate that Temple violated either his procedural or substantive due process rights during the disciplinary proceedings and/or the grade grievance process.

8

      *1.*     *Temple Provided Osei With <u>Procedural</u> Due Process During The Disciplinary Proceedings.*[7]

To state a claim for relief under the procedural component of the Fourteenth Amendment, Osei must demonstrate that the procedural safeguards surrounding his suspension were inadequate. <u>Board of Regents v. Roth</u>, 408 U.S. 564, 568-69 (1972). The requirements of due process vary with the type of proceeding involved, but the basic elements are notice and the opportunity to be heard by a fair and impartial tribunal. <u>Sill v. Pennsylvania State University</u>, 462 F.2d 463, 469 (3d Cir. 1972). Universities are entitled to establish their own rules and regulations, including disciplinary proceedings, and the courts should interfere only when a clear Constitutional infringement occurs. <u>Esteban v. Central Missouri State College</u>, 415 F.2d 1077, 1090 (8th Cir. 1969).

In <u>Goss v. Lopez</u>, for example, the Supreme Court determined that students facing temporary suspensions have interests qualifying for the protection of the Due Process Clause. 419 U.S. 565, 573-575 (1975). The <u>Goss</u> Court described the process that is constitutionally required when a student is suspended from school for 10 days or less: "[D]ue process requires... that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." <u>Id.</u> at 581. In <u>Goss</u>, the Supreme Court held that, "in being given an opportunity to explain his version of the facts, the student must first be told what he is accused of doing and the basis of the accusation." <u>Id.</u> at 582. The Supreme Court, however, stopped short of construing the Due Process Clause to require that the hearings afford the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call witnesses. <u>Id.</u> at 583. The Court, however, explained that "[l]onger suspensions or expulsions for the

---

[7]    Because Osei's Fifth Amendment (right to confront accuser) claim is inextricably intertwined with his Fourteenth Amendment (due process) claim, the two claims will be addressed jointly here.

remainder of the school term, or permanently, *may* require more formal procedures. Id. at 584 (emphasis added).

Temple urges the Court to apply the Goss standard to the instant matter for the reasons artfully stated in Esteban:

> A college has the inherent power to promulgate rules and regulations; that it has the inherent power properly to discipline; that it has power appropriately to protect itself and its property; that it may expect that its students adhere to generally accepted standards of conduct; that, as to these, flexibility and elbow room are to be preferred over specificity; that procedural due process must be afforded . . . by way of adequate notice, definite charge, and a hearing with opportunity to present one's own side of the case and with all necessary protective measures; that school regulations are not to be measured by the standards which prevail for the criminal law and for criminal procedure; and that the courts should interfere only where there is a clear case of constitutional infringement.

415 F.2d at 1089-90.

Applying Goss to instant matter, it is clear that Osei received the benefit of a process well beyond that required by the Supreme Court. Specifically, Temple provided Osei with: (1) notice of the charges pending against him; (2) a personal pre-hearing meeting to discuss the SCB disciplinary proceedings; (3) the right to have an attorney/advisor present at both the pre-hearing meeting and the SCB hearing; (4) notice of the SCB hearing; (5) a list of its witnesses; (6) copies of its exhibits; (7) an opportunity to explain the evidence and an opportunity to present his side of the story; (8) an opportunity to present mitigating circumstances during the "sanctioning" phase of the hearing; (9) notice of its finding of responsibility and sanctions; and (10) an opportunity to appeal its findings. These procedural safeguards went well beyond what due process requires under Goss. Accordingly, Osei was afforded more than adequate due process and his Fourteenth Amendment claim is not viable.

The Supreme Court's decision in <u>Mathews v. Eldridge</u>. 424 U.S. 319, 334-335 (1975) is also instructive.  The general procedural due process factors set forth by the <u>Mathews</u> Court include: (1) the private interest that will be affected by the official action; (2) the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the fiscal and administrative burden that the additional or substitute procedural requirements would entail.  <u>Id</u>; <u>see also</u> <u>Palmer by Palmer v. Merluzzi</u>, 868 F.2d 90, 95 (3d Cir. 1989) (applying <u>Mathews</u> factors to an academic and extra-curricular suspension and finding no violation of due process); <u>Collins v. Chichester Sch. Dist.</u>, No. 96-6039, 1998 U.S. Dist. LEXIS 9561, 13-15 (E.D. Pa. June 29, 1998) (applying <u>Mathews</u> factors to an academic suspension and finding no violation of due process).

Osei undoubtedly has an interest in continuing his education undeterred.  Temple provided Osei numerous and varied procedural safeguards to protect him from an unreasonable and/or arbitrary deprivation of that interest.  Nevertheless, Osei's main complaint is that Dr. Krow did not testify at the hearing, and a result, Osei could not cross-examine his accuser. Likewise, Osei makes vague complaints about evidentiary issues (*i.e.*, the admission of hearsay, character evidence, witness bias, etc.).  These complaints, however, do not support a Fourteenth Amendment due process violation claim.

"[S]chool regulations are not to be measured by the standards which prevail for criminal law and for criminal procedure."  <u>Esteban</u>, 415 F.2d at 1089-90.  Accordingly, Osei's reliance on the Sixth Amendment right to confront witnesses is misplaced in the educational arena.[8]

---

[8]       Though not directly applicable, several courts have held that it does not violate due process for a school disciplinary hearing to be conducted without the presence of certain witnesses.  <u>Newsome v. Batavia Local Sch. Dist.</u>, 842 F.2d 920, 925 (6th Cir. 1988) (finding burden of cross-examination on the administration of school discipline outweighs the benefits to be derived from that procedure); <u>McClain v. Lafayette County Bd. Of Educ.</u>, 673 F.2d 106, 109-110 (5th Cir. 1982) (the playing of taped student witness statements at the plaintiff's expulsion hearing did not violate the plaintiff's due process rights);

Furthermore, because Dr. Krow did not accuse Osei of anything, other than sending the emails at issue, no need exists to test the veracity of his statements through cross-examination. Osei's emails speak for themselves and form the basis for the charges against Osei. As such, Temple afforded Osei due process when it provided him with copies of the emails and afforded him an opportunity to "present his side of the story." <u>Goss</u>, 419 U.S. at 581; <u>See also</u>, <u>G.C., et al. v. Bristol Township Sch. Dist.</u>, No., 05-4800, 2006 U.S. Dist. LEXIS 56108, at *9 (E.D. Pa. August 11, 2006) (denying a student's due process claim premised on the right to confront an accuser because the school provided the student with copies of witness statements).

Osei's evidentiary objections, as applied to the university setting, are also meritless as Temple's faculty, administrators, and students serve as the fact finders at Student Conduct Board disciplinary proceedings. Forcing these individuals to administer hearings according to formal rules of evidence is unwarranted given the circumstances and realities of the university setting. <u>See</u> <u>Boykins v. Fairfield Bd. of Education</u>, 492 F.2d 697, 701 (5th Cir. 1974) (declining to place upon a board of laymen the duty of observing and applying the common-law rules of evidence in a school disciplinary hearing). Temple -- a wide-ranging, state-related, urban public research university -- should not have to adhere to the exacting strictures of criminal law, criminal procedure, and evidentiary procedure for every student accused of violating its *Student Conduct Code*. To rule otherwise would force Temple to create a full-blown judicial system; resulting in untold fiscal and administrative burdens on the faculty and administration. Accordingly, under

---

L.Q.A. ex rel. Arrington v. Eberhart, 920 F. Supp. 1208, 1219 (M.D. Ala. 1996), <u>aff'd</u> 111 F.3d 897 (11th Cir. 1997) (admission of statements of students not present at the hearing does not violate procedural due process requirement); <u>Tasby v. Estes</u>, 643 F.2d 1103, 1106 (5th Cir. 1981) (rights in a student disciplinary hearing may properly be determined upon the hearsay evidence of school administrators who investigate disciplinary infractions).

either <u>Goss</u> or <u>Mathews</u>, Osei's Fourteenth Amendment procedural due process claim is not viable.

2.    *Osei's Suspension Does Not Give Rise To A <u>Substantive</u> Due Process Claim.*

The substantive due process protection of the Fourteenth Amendment prohibits those acting under color of state law from taking away a person's property interest for reasons that are "arbitrary, irrational, or tainted by improper motive." <u>Nicholas v. Penn. State Univ.</u>, 227 F.3d 133, 139 (3d Cir. 2000). While certain interests in real property are entitled to substantive due process protection, not all property interests are so protected. <u>Nicholas</u>, 227 F. 3d at 140 (quoting <u>Reich v. Beharry</u>, 833 F.2d 239, 243 (3d Cir. 1989)).

"To prevail on a substantive due process claim under § 1983, a plaintiff must establish as a threshold matter that he [or she] has a protected property interest in which the Fourteenth Amendment's due process protection applies." <u>Ward v. Temple Univ.</u>, No. 02-7414, 2003 U.S. Dist. LEXIS 544 at *7-8 (E.D. Pa. Jan. 2, 2003) (citing <u>Woodwind Estates, Ltd. v. Gretkowski</u>, 205 F.3d 118, 123 (3d Cir. 2000)). A plaintiff is not afforded substantive due process protections for every arbitrary and irrational government act, but only for those that deprived the plaintiff of a fundamental property right "implicitly protected by the Constitution." <u>Independent Enters.</u>, <u>Inc. v. Pittsburgh Water & Sewer Auth.</u>, 103 F.3d 1165, 1179, n.12 (3d Cir. 1991) (citations omitted).

To state a substantive due process claim, "a plaintiff must have been deprived of a particular quality of property interest." <u>Ward</u>, 2003 U.S. Dist. LEXIS 544 at *8 (quoting <u>DeBlasio v. Zoning Bd. of Adjustment</u>, 53 F.3d 592, 598 (3d Cir. 1995)). The Third Circuit has explained that "whether a certain property interest embodies this 'particular quality' is not

determined by reference to state law, but rather depends on whether that interest is 'fundamental' under the United States Constitution." Id. at *8.

The Third Circuit has "so far limited non-legislative substantive due process review to cases involving real property ownership." Nicholas, 227 F.3d at 141. Osei's substantive due process claim must fail because continuous enrollment -- uninterrupted by a disciplinary suspension -- is not a fundamental constitutional right and does not rise to the level necessary to trigger protection under the Fourteenth Amendment. See Manning v. Temple Univ., No. 03-4012, 2004 WL 3019230, *7 (E.D. Pa. Dec. 30, 2004) (finding that substantive due process does not protect a student's right to continued enrollment).

Such a conclusion is entirely consistent with the decisions rendered on this issue in this Circuit. For example, the Third Circuit in Reich held that the deprivation of a service contract with the state did not give rise to a substantive due process claim. 883 F.2d at 244-45. In Nicholas, the Third Circuit held that tenured public employment was not a fundamental property interest entitled to substantive due process protection. 227 F.3d at 142-43. In Ward, the Court concluded that in-state residency status "is not a fundamental property interest under the federal constitution." 2003 U.S. Dist. LEXIS 544 at *9-10. In support of that conclusion in Ward, Judge Bartle stated that "[i]f loss of a job does not fit into [the fundamental property interest] category, surely having to pay full tuition does not either." Id. at *9. These holdings leave the inescapable conclusion that Osei's substantive due process claim is flawed because he has not implicated a fundamental property interest.

Even if Osei does have a fundamental constitutional right in his continued education (which he does not), Temple did not violate Osei's substantive due process rights because Temple did not deprive him of that right in an arbitrary, capricious, or improper manner. Rather,

14

Temple conducted Osei's disciplinary procedures in accordance with its *Student Conduct Code Procedures*, which include the built-in procedural safeguards, including appellate review, discussed above to ensure that any sanction imposed by Temple is rational, reliable, and proper.

> 3. *Temple Provided Osei With Both Procedural and Substantive Due Process Throughout His Grade Grievance.*

To the extent Osei argues that the grade grievance procedures deprived him of either procedural or substantive due process, assuming that the courts can review the single grade of a student enrolled in a public educational institution, Osei must demonstrate that Temple acted in an "arbitrary or capricious manner" to prevail on his claim. See Board of Curators of Univ. of Mo. v. Horowitz, 435 U.S. 78, 85-92 (1978) (analyzing both procedural and substantive due process in academic, as opposed to disciplinary, proceedings, under the same "arbitrary and capricious" standard). In Horowitz, the Supreme Court declined to further enlarge the judicial presence in academic dismissals, because *"like the decision of an individual professor as to the proper grade for a student in his course,* the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision-making." Id. (emphasis added).

Here, Osei is asking the Court to do that which was restricted by the Supreme Court in Horowitz, *i.e.*, to review Dr. Krow's decision as to his grade in Organic Chemistry. This Court, however, should refrain from revisiting Osei's grade, because Osei cannot make a showing of showing of arbitrariness or capriciousness. To the contrary, Temple provided Osei: (1) an explanation from Dr. Krow regarding his Organic Chemistry grade; (2) a personal meeting with Dr. Levis, chair of the Chemistry department, to discuss his grade; (3) the right to appeal his grade to the UGC-CST; and (4) the right to appeal his grade to the Vice Provost of

Undergraduate Studies, Dr. Richard Englert. See Complaint, Exs. A.4 (Dr. Krow explaining the rationale behind Osei's Organic Chemistry grade) and C (CST-UGC unanimously upholding the grade upon review). As such, Osei's Organic Chemistry grade was rational and proper. Accordingly, Osei was afforded more than adequate procedural and substantive due process with respect to his grade grievance and, as a result, his Fourteenth Amendment claim is not viable.

**B.     Osei's Failed To Plead A Viable First Amendment Claim.**

Osei cannot demonstrate that section 3 of Temple's *Student Conduct Code* – barring threats and intimidation – violates his First Amendment right to free speech. (Compl. at ¶ 53). As a threshold matter, Osei's First Amendment claims fail because his "speech" (the emails he sent to Dr. Krow) constituted "true threats" and are thus not afforded First Amendment protection. See Watts v. United States, 394 U.S. 705, 708 (1969) (explaining that the First Amendment does not prohibit banning "true threats"); Virginia v. Black, 538 U.S. 343, 359-60 (2003) (defining "true threat" as those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual and explaining that the prohibition on "true threats" protects individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur).

Moreover, to succeed on his "content discrimination" claim, Osei must first demonstrate that section 3 is actually "content-based." As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content-based.[9] By contrast, laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are content-neutral.[10]

---

[9]     See, e.g., Burson v. Freeman, 504 U.S. 191, 197, (1992) ("whether individuals may exercise their free-speech rights near polling places depends entirely on whether their speech is related to a political

Here, section 3 does not prohibit threats or intimidation based on race, creed, sex, national origin, political viewpoint, or any other content-based criterion. Rather, it plainly prohibits "any act or threat of intimidation or physical violence toward another person." As such, section 3 is content-neutral. Accordingly, the appropriate standard to evaluate the constitutionality of section 3 is the "intermediate" level of scrutiny applicable to content-neutral restrictions that impose an incidental burden on speech. See United States v. O'Brien, 391 U.S. 367 (1968). Under O'Brien, a content-neutral regulation will be sustained if:

> it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

Id. at 377.

In this case, as set forth in the *Introduction to the Student Conduct Code* Temple's important or substantial interest in preventing intimidation or threats, and more broadly, in administering a *Student Conduct Code*, is "promoting and disseminating knowledge" to its students while maintaining order to minimize disruptions to the educational process (*i.e.*, student safety). Section 3, therefore, does not suppress free expression; rather, it, along with the other sections of the *Student Conduct Code*, promotes an environment in which the freedom of inquiry and freedom of expression are valued.

---

campaign"); Boos v. Barry, 485 U.S. 312, 318-319, (1988) (plurality opinion) (whether municipal ordinance permits individuals to "picket in front of a foreign embassy depends entirely upon whether their picket signs are critical of the foreign government or not").

[10]    See, e.g., City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 804, (1984) (ordinance prohibiting the posting of signs on public property "is neutral--indeed it is silent--concerning any speaker's point of view"); Heffron v. International Society for Krishna Consciousness, Inc., 452 U.S. 640, 649, (1981) (state fair regulation requiring that sales and solicitations take place at designated locations "applies evenhandedly to all who wish to distribute and sell written materials or to solicit funds").

Any incidental restriction on alleged First Amendment freedoms is minimized because section 3 is narrowly drafted to proscribe students from committing acts or threats of intimidation or physical violence. Hence, section 3 places no restriction, incidental or otherwise, on First Amendment freedoms because section 3 only prohibits "true threats." See Watts, 394 U.S. at 708. Despite Osei's argument to the contrary,[11] section 3 does not prohibit a student's right to pursue legal claims or seek judicial redress. What is does prohibit, however, is a student's illegal, malicious, or perverted use of legal process to intimidate, threaten, or blackmail, professors into fearing for their safety and well-being.

Therefore, because Osei's threatening emails are not protected under the First Amendment and because section 3 is content-neutral, furthers Temple's interest in promoting and disseminating knowledge on a safe campus, and is narrowly tailored to prohibit actual threats of intimidation or physical violence, Osei's ill-defined First Amendment allegations of "content discrimination," vagueness, and overbreadth fail to state a claim and must be dismissed.

## C.    Osei Failed To Plead A Viable Discrimination Claim Under Section 1983.

To state a claim for relief under section 1983, Osei must demonstrate intentional, purposeful discrimination on the basis of race or some other protected class. See General Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 389 (1982); Washington v. Davis, 426 U.S. 229, 241 (1976); Keenan v. City of Philadelphia, 983 F.2d 459, 465 (3d Cir. 1992); Ascolese v.

---

[11]    It appears that Osei attempts to plead a section 1983 retaliation claim under the First Amendment as well. (Compl. at ¶¶ 54(k)(l)(p) and 60). To plead a section 1983 retaliation claim under the First Amendment, Osei must allege: (1) constitutionally protected conduct; (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the constitutionally protected conduct and the retaliatory action. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). Here, however, as Ex. B.2 to the Complaint makes clear, Temple suspended Osei for threatening his professor (and his professor's family) with "curses" and "physical and spiritual" justice. As such, Osei cannot establish even the first element of his retaliation claim, let alone the remaining two elements.

SEPTA, 902 F. Supp. 533, 546 (E.D. Pa. 1995). Even under the liberal pleading standards

afforded by the Federal Rules of Civil Procedure, Osei does not allege a set of facts in support of

any race, religion, or national origin discrimination claim that would entitle him to relief. [12]

Osei's allegations are nothing more than bald accusations of race-, religion- or national

origin-based discrimination and unequal treatment without any factual support. (Compl. at ¶¶

26, 61). Osei claims that he received grades or suspensions unfairly due to his race, national

origin, or religion, but he fails to allege facts showing that similarly-situated persons who are not

members of his race, national origin, or religion were treated any differently. The Complaint is

devoid of factual documentation as to how Temple acted with purposeful animus or had a pattern

or practice of intentional discrimination. Osei's conclusory, generic allegations of discrimination

are fatal to his ability to survive this motion to dismiss. Morse v. Lower Merion School Dist.,

132 F.3d 902, 906 n.8 (3d Cir. 1997).[13]

**D.      The Court Should Not Exercise Supplemental Jurisdiction.**

As discussed above, Osei failed to allege a viable federal cause of action against Temple

under either the First, Sixth, or Fourteenth Amendments or section 1983. This Court has the

discretion to decline supplemental jurisdiction over Osei's state law claims. 28 U.S.C. §

1367(c)(3). When all federal claims are dismissed before trial, "the balance of factors to be

---

[12]     Similarly, to recover under Title VI of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000d et seq.
("Title VI"), Osei must demonstrate intentional, purposeful discrimination on the basis of race or some
other protected class. Pryor v. NCAA, 288 F.3d 548, 562 (3d Cir. 2002). Here, Osei's Title VI claim
(assuming he brought one), akin to his section 1983 claim, fails because he cannot demonstrate
intentional discrimination.

[13]     To the extent Osei's discrimination claims are based on the Pennsylvania Human Relations Act,
43 Pa.C.S. § 951 et seq. ("PHRA"), this Court should dismiss his claims because Osei has not yet
exhausted all administrative remedies and only recently filed a Complaint with the Pennsylvania Human
Relations Commission (PHRC). See Tlush v. Manufacturers Resource Ctr., 315 F. Supp.2d 650, 656
(E.D. Pa. 2002) ("[P]laintiffs who fail to exhaust administrative remedies with the PHRC are barred from
judicial remedies under the PHRA").

considered under the supplemental jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point towards *declining* jurisdiction over the remaining state law claims." Hutt v. Albert Einstein Med. Ctr., No. 04-03440, 2005 U.S. Dist. LEXIS 21548, at *29 (E.D. Pa. Sept. 28, 2005) (emphasis added).

As the federal claims against Temple should be dismissed, Temple respectfully requests that the Court decline jurisdiction over Osei's remaining state law claims and dismiss the matter in its entirety.

## IV.    CONCLUSION

Even accepting Osei's allegations as true, Osei failed to allege a viable federal cause of action against Temple under either the First, Sixth, or Fourteenth Amendments or section 1983. Without original jurisdiction over this matter, this Court should decline to exercise supplemental jurisdiction and dismiss Osei's remaining shapeless state law claims of breach of contract and tort.

Dated: June 1, 2010            By:  _____
                                     Michael J. Fortunato, Esquire
                                     Edward J. Heffernan, Esquire
                                     RUBIN, FORTUNATO & HARBISON, P.C.
                                     10 South Leopard Road
                                     Paoli, PA  19301
                                     (610) 408-2005/2021 / (610) 408-1869 (facsimile)
                                     mfortunato@rubinfortunato.com
                                     eheffernan@rubinfortunato.com

                                     Attorneys for Defendants:
                                     Temple University; Dr. Mia Luehrmann;
                                     Ms. Andrea C. Seiss; Dr. Robert J. Levis; and
                                     Dr. Grant Krow.

## CERTIFICATE OF SERVICE

I, Edward J. Heffernan, certify that true and correct copies of *Defendants' Motion to Dismiss Plaintiff's Complaint*, and a memorandum of law in support thereof, were served upon Michael Osei, Pro Se Plaintiff, by email and First Class U.S. Mail as follows:

> Michael Osei, Pro Se
> 3016 North Broad Street
> Philadelphia, PA  19132
> mikeosei@gmail.com

Dated: June 1, 2010

Edward J. Heffernan, Esquire
RUBIN, FORTUNATO & HARBISON, P.C.
10 South Leopard Road
Paoli, PA  19301
(610) 408-2021 / (610) 408-1869 (facsimile)
eheffernan@rubinfortunato.com