IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL OSEI, | CIVIL ACTION NO. 10-2042 - CDJ |
| Plaintiff, | |
| v. | FILED |
| TEMPLE UNIVERSITY – OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION, ET AL., | JUL 22 2010 MICHAEL E. KUNZ, Clerk By_____Dep. Clerk |
| Defendants. | |

REPLY BRIEF IN SUPPORT OF TEMPLE'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

I.   INTRODUCTION

Osei has failed to allege facts to support any cause of action against Temple upon which relief could be granted under either the First, Sixth, or Fourteenth Amendments or section 1983. Indeed, as demonstrated in *Temple's Motion to Dismiss*, Osei's threatening emails are not protected under the First Amendment because they are true threats and because Section 3 of Temple's *Student Conduct Code Procedures* ("Section 3"), which governs threatening and/or intimidating acts, is content-neutral, rational, and Constitutitional. Furthermore, Temple afforded Osei both substantive and procedural due process with respect to his suspension from Temple and his Organic Chemistry grade. Finally, Osei cannot make a colorable showing of discrimination.

Osei's *AMENDED Brief of Law and Facts Opposing Temple's Motion to Dismiss Complaint* ("Response") attempts to cure the deficiences of his *Complaint* by: (1) invoking the Free Exercise Clause of the First Amendment; (2) creating due process violations where none

exist; and (3) going on *ad nauseum* about perceived flaws and inconsistencies in Dr. Krow's methodologies (both in teaching and grading) and Dr. Krow's alleged bias toward Osei. However, Osei's arguments do not save his case and the Court should dismiss his action because the *Complaint* fails to state a federal (or any other) claim upon which relief can be granted.[1]

## II.  LEGAL ARGUMENT

### A.  Osei's Religious Beliefs Do Not Exonerate Him or Render Section 3 Unconstitutional.[2]

Osei incorrectly contends that the religious "context" of his emails provides him immunity and/or causes Section 3 to violate the Free Exercise Clause of the First Amendment. See *Response* at pp. 5-45. To the contrary, "the Free Exercise Clause does not afford absolute protection to religiously motivated expression." Employment Div., Dept. of Human Res. of Or. v. Smith, 494 U.S. 872, 877 (1990). As the Supreme Court has explained, "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." Church of the Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 531 (1993). Under the Supreme Court's decision in Smith, a neutral, generally applicable law is subject only to rational-basis review, which "requires merely that the action be rationally related to a legitimate government objective." Tenafly Eruv Ass'n v. Tenafly, 309 F.3d 144, 165 n.24 (3d Cir. 2002). "A law is 'neutral' if it does not target religiously motivated conduct . . . ." Blackhawk v. Pennsylvania, 381 F.3d 202, 209 (3d Cir. 2004). A law is "generally applicable" if it extends to all conduct that

---

[1] Even if Osei's *Complaint* included all the new allegations contained in his *Response* (which it does not), it would still fail to state a claim upon which relief could be granted. As a result, Osei's *Complaint* should be dismissed with prejudice and without leave to amend.

[2] Temple does not question the sincerity of Osei's religious beliefs and for the purposes of this memorandum only, Temple will assume the emails at issue, when evaluated contextually as Osei suggests, reflect his beliefs.

2

undermines the purposes of the law and does not selectively burden religiously motivated conduct. Combs v. Homer-Center Sch. Dist., 540 F.3d 231, 242 (3d Cir. 2008) (citing Blackhawk, 381 F.3d at 209).

The Third Circuit recently addressed these very issues in Brown v. City of Pittsburgh, 586 F.3d 263, 284 (3d Cir. 2009). In that case, Pittsburgh, in response to concerns about aggressive protests and confrontations at health care facilities providing abortions, enacted an ordinance that established a 15 foot "buffer zone" around the entrances to hospitals, medical offices, and clinics. Id. at 266. Plaintiff challenged the ordinance under the Free Exercise Clause, claiming that its restrictions impermissibly interfered with her religiously motivated efforts to dissuade women from undergoing abortions. Id. at 284. The Third Circuit found that the ordinance's "restrictions do not evince hostility to religion, nor do they selectively burden religious conduct." Id. As such, the 15 foot "buffer zone" did not violate the Constitution because it was content-neutral and generally applicable in that it prohibited all persons from picketing or demonstrating within the specified area. Id.

Here, Section 3 plainly prohibits "any act or threat of intimidation or physical violence toward another person . . . ." Section 3, akin to the challenged ordinance in Brown, in no way targets religiously motivated conduct. Rather, it seeks to prohibit Temple-related individuals from intimidating or physically threatening each other. Moreover, Section 3 is generally applicable because it applies uniformly, regardless of the motivation prompting the proscribed threats and acts. As a result, because Section 3 is a neutral, generally applicable law, it is subject only to a rational-basis review. Temple's bar against acts and threats of physical violence and intimidation is rationally related to its legitimate objective of "promoting and disseminating knowledge" to its students while maintaining order to minimize disruptions to the educational

3

process (*i.e.*, student safety). Being rationally-related to that interest, Section 3 comports with the Free Exercise Clause.

Accordingly, Temple's imposition of sanctions against Osei for engaging in acts proscribed by Section 3, regardless of Osei's motivation, religious or otherwise, does not violate the Constitution.[3]

### B. Temple Afforded Osei Due Process Under the Fourteenth Amendment.[4]

In his *Response*, Osei attempts to create Fourteenth Amendment due process violations by applying inapposite legal standards and complaining about hyper-technical flaws and inconsistencies in Temple's disciplinary proceedings. These arguments fail to support a claim because Temple's afforded Osei with due process as required by the Fourteenth Amendment – *i.e.*, notice and the opportunity to be heard by a fair an impartial tribunal. Sill v. Pennsylvania State Univ., 462 F.2d 463, 469 (3d Cir. 1972).

#### 1. The Pennsylvania Administrative Code and Federal Administrative Procedure Act Do Not Govern Temple's Disciplinary Procedures.

Osei incorrectly contends that the Pennsylvania Administrative Code (the "Pa. Code") and the Federal Administrative Procedure Act, 5 USCS §§ 551 *et seq.* (the "APA"), govern Temple's disciplinary procedures.[5] Osei is mistaken for two reasons. First, Chapter 12 of the Pa. Code governs Pennsylvania Public Schools (elementary and high schools) and Chapter 505

---

[3] Even if analyzed under Pennsylvania's Religious Freedom Protection Act (RFPA), 71 PA. STAT. ANN. §§ 2401-2407, Osei's claims still fail because he can not demonstrate that Section 3: (1) significantly constrains or inhibits conduct or expression mandated by his sincerely held religious beliefs; (2) significantly curtails his ability to express adherence to his religious faith; (3) denies him a reasonable opportunity to engage in activities which are fundamental to his religion; or (4) compels conduct or expression which violates a specific tenet of his religious faith.

[4] To avoid repetitive arguments, Temple will solely address arguments raised -- or set forth in sufficient detail for the first time -- by Osei in his *Response*.

[5] See *Response* at ¶¶ 64, 65, 71, 73, 76, 79, 85 and 87 (citing the Pa. Code) and 76, 90, 91 and 93 (citing the APA).

4

of the Pa. Code governs *State System* of Higher Education Universities.[6] Because Temple is *state-related* school and a member of the *Commonwealth* System of Higher Education,[7] and not a government instrumentality, the due process requirements of the Pa. Code do not control this matter.[8] See *Response* at ¶66, n.7 (quoting verbatim the holding of the Commonwealth Court that explained that Temple is *state-related* university, and is *not* a government instrumentality).

Second, the APA is a United States federal law that governs the way in which administrative *agencies of the federal government of the United States* may propose and establish regulations. See 5 USCS § 551(1)(d) (defining federal "agency" and specifically excluding state agencies). Because Temple is not a federal agency, the due process requirements of the APA do

---

[6] State System of Higher Education Universities include: Bloomsburg University, California University, Cheyney University, Clarion University, East Stroudsburg University, Edinboro University, Indiana University, Kutztown University, Lock Haven University, Mansfield University, Millersville University, Shippensburg University, Slippery Rock University, and West Chester University.

[7] Commonwealth System of Higher Education Universities include: Lincoln University, Pennsylvania State University, Temple University, and the University of Pittsburgh.

[8] Though not controlling, 22 Pa. Code § 505.3 is instructive because it addresses the procedural guarantees that State System of Higher Education Universities must provide their students. It provides nine safeguards: (1) reasonably specific advanced written notice of charges containing a description of the alleged acts of misconduct, including time, date and place of occurrence and the rules of conduct allegedly violated by the student; (2) advanced written notice of the date, time and place of the hearing, unless the right is waived in writing by the student; (3) an opportunity for submission of written, physical and testimonial evidence and for reasonable questioning of witnesses by both parties; (4) a reasonably sufficient interval between the date of service of charges and the date of the hearing to allow the student to prepare a defense; (5) an impartial hearing body which may consist of a committee, board or individual appointed by the university president; (6) maintenance of a written summary or audiotape record of the hearing at university expense, though students may be required to pay the costs of copies of requested records; (7) a decision based upon evidence sufficient to make a reasonable person believe that a fact sought to be proved is more likely true than not; (8) a written decision in which the facts and reasons are set forth with reasonable specificity which shall be issued within 30 working days after the close of proceedings; (9) identification by the student of an adviser, who may be an attorney, to be present at hearings. The adviser may only consult and interact privately with the student, unless the university grants the adviser permission to represent a student in a particular case. 22 Pa. Code § 505.3(1)-(9). As set forth in *Temple's Motion to Dismiss*, Temple provided Osei with nearly all of these procedural guarantees and actually afforded Osei with additional procedural safeguards, such as a pre-hearing conference and the right to appeal, above and beyond what is required by the Pa. Code. See 22 Pa. Code § 505.8 (explaining that appeals from disciplinary hearing findings are discretionary and not required to satisfy due process).

5

not control this matter. To the contrary, the Fourteenth Amendment governs Temple's disciplinary proceedings.

### 2. The Alleged Flaws in Temple's Disciplinary Procedures Do Not Support a Fourteenth Amendment Due Process Violation Claim.

In his *Response*, Osei latches on to what he perceives as "flaws and inconsistencies" with the process that resulted in his suspension. For the reasons set forth below, these flaws and inconsistencies do not support a Fourteenth Amendment procedural due process violation claim.

#### a. Notice Was Reasonable and Adequate.

Osei complains the January 12, 2010 hearing notice did "not cite all the evidence against Osei." See Response at ¶ 64. This complaint, and the related complaint that he received only certain evidence (two of his emails to Dr. Krow) shortly before the hearing, does not support his due process claim. Due process requires that Temple provide Osei "reasonable" notice of the accusations and charges against him. See Van Le v. Univ. of Med. & Dentistry, No. 09-2632, 2010 U.S. App. LEXIS 9767, *8-9 (3d Cir. May 12, 2010) (finding notice adequate even though other related incidents were presented against student at hearing); Pugel v. Bd. of Trs. of the Univ. of Ill., 378 F.3d 659, 665 (7th Cir. 2004) (finding that, according to plaintiff's own complaint, plaintiff received written notice of the charges against her and that the decision to discharge her was based on those charges); Nash v. Auburn University, 812 F.2d 655, 663 (11th Cir. 1987) (finding "rudimentary" notice that specified accusations of academic dishonesty adequate and not requiring advance notice of witness statements); Segal v. Temple Univ. Sch. of Law, No. 99-CV-3220, 1999 U.S. Dist. LEXIS 19073, *4-8 (E.D. Pa. Dec. 7, 1999) (finding notice adequate because law student was aware of the charges against him and the university's investigation generally). Accordingly, Osei was provided adequate notice of the charges against him on January 12, 2010. See Ex. B.3 to the *Complaint*.

6

Furthermore, with respect to the notification of the *Student Conduct Board* findings, Temple informed Osei promptly of the results of the hearing on February 8, 2010, less than one week after the hearing was held on February 3, 2010. Osei argues that because the letter imposing sanctions did not contain specific factual findings his due process rights were violated. See *Response* at ¶ 77. This argument is meritless because: (i) Osei was well aware of the facts leading to Temple's findings; (ii) Temple afforded him the opportunity to appeal it findings; and (iii) the risk of an erroneous deprivation of his rights for failing to include specific factual findings in the notice of sanctions is exceedingly low.

### b. Temple Allowed Osei to Present Witnesses; He Declined.

Osei complains that Temple denied him the opportunity to present witnesses. See *Response* at ¶ 79. This claim is contradicted by the exhibits to the *Complaint* and *Response*. As such, his claims cannot be accepted as true and do not support his claim for relief. Temple allowed Osei to present witnesses at the hearing. See Exhibit B.3 to the *Complaint* (January 28 Notice of Hearing). However, Osei voluntarily declined to present witnesses at the hearing. See Exhibit E.4 to the *Response* (February 2, 2010 Osei email). Any suggestion that Temple did not allow him to present witnesses is directly contradicted by these exhibits and cannot support a due process violation claim.

### c. Ms. Andrea Caporale Seiss's Role as Administrator Did Not Bias the Student Conduct Board or Appellate Board.

Osei complains that Ms. Andrea Caporale Seiss (Senior Associate Dean of Students), played multiple roles and this biased the *Student Conduct Board* and/or the *Appellate Board*. See *Response* at ¶ 90. To the contrary, Ms. Seiss's only role during the proceedings was that of an administrator. Ms. Seiss sat on neither the *Student Conduct Board* that conducted Osei's hearing nor the *Appellate Board* that reviewed the findings of the hearing. Furthermore, Ms.

7

Seiss did not testify as a witness. As such, Ms. Seiss in no way biased the disciplinary proceedings.

### d. Temple Permitted Osei to Have an Attorney Participate at the Hearing.

Osei complains that his attorney was not given a full opportunity to "represent" him at the hearing before the *Student Conduct Board*. To support this argument, Osei relies on case law interpreting Pennsylvania administrative agency law inapplicable to Temple, and sections of the Pa. Code inapplicable to the university setting. See *Response* at ¶ 73. To the contrary, ordinarily, colleges and universities need not allow active representation by legal counsel or some other sort of campus advocate. Flaim v. Med. College of Ohio, 418 F.3d 629, 636 (6th Cir. 2005) (explaining that absent pending criminal proceedings due process does not require representation by counsel). Moreover, though not controlling, Temple allowed Osei's attorney to "participate" in the hearings as required by 22 Pa. Code § 505.3(10), which allows attorney-advisors present at disciplinary hearings to "only consult and interact privately with the student."

Therefore, because no criminal charges were pending against Osei and because Temple allowed Osei's attorney to consult and interact with him during the proceedings, Temple did not violate Osei's right to due process under the Fourteenth Amendment.

### e. Alleged Violations of Temple's Policies and Practices Do Not Violate the Fourteenth Amendment.

Osei argues that Temple's alleged failure to follow university policy and practice pertaining to the recommendation of sanctions led to a "miscarriage of justice" and a "conspiracy per se." See *Response* at ¶83. Specifically, Osei argues that allowing Dr. Luehrmann (Dean for Undergraduate Studies for the College of Science and Technology), to recommend a sanction violated Temple's standard "custom" of allowing the Dean of the student's own college to

8

provide such a recommendation. Osei argues that the dean of his college, the Fox School of Business and Management, should have made recommendation regarding sanctions and this departure from the norm violated due process. This argument fails, however, because a "school's failure to follow its own policies is not, in itself, a violation of due process." Van Le, 2010 U.S. App. LEXIS 9767 at *9; see also Winnick v. Manning, 460 F.2d 545, 550 (2d Cir. 1972) ("[W]e are not inclined to hold that every deviation from a university's regulations constitutes a deprivation of due process."); Manning v. Temple Univ., No. 03-4012, 2004 WL 3019230, *8-9 (E.D. Pa. Dec. 30, 2004) (finding that Temple provided graduate student adequate procedural due process even though student was not advised of opportunity to appeal). So long as the procedural protections actually provided were sufficient and fairly administered, due process is satisfied. See Van Le, 2010 U.S. App. LEXIS 9767, at *9. Here, the *Student Conduct Board* was free to fashion sanctions as it saw fit, and Dr. Luehrmann's recommendation that Osei be expelled (which was not followed), was just that – a recommendation. As such, Dr. Luehrmann's recommendation did not violate Osei's due process rights under the Fourteenth Amendment.

### f. Temple's Determination that Osei Violated Section 3 Was Supported By Substantial Evidence.

Osei improperly argues that Temple determined that he violated Section 3 without substantial evidence. The substantial evidence standard requires such evidence "as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). This standard must be applied when viewing the record as a whole. Id.

Here, according to Osei's own *Complaint*, Temple presented sufficient evidence during the hearing, through Osei's emails and direct witness testimony, to support a reasonable

9

conclusion that Osei violated Section 3. Moreover, a reasonable factfinder could have discredited Osei's defense that he did not intend to threaten Dr. Krow or that his emails related to something other than physical acts. Thus, the suspension was backed by substantial evidence. Moreover, respectfully, it is not for this Court, to retry *de novo* the charges against Osei. See Sill, 462 F.2d at 470 (affirming decision of district court that substantial evidence supported the findings of university).

### C. Osei's Organic Chemistry Grade Was Based on Dr. Krow's Professional Judgment and Rational Grounds.

In his *Response*, Osei goes on at length about Dr. Krow's alleged shortcomings and his violations of Temple policy. These allegations, however, do not support a viable Fourteenth Amendment due process violation claim nor do they comport with Osei's exhibits.

Tellingly, the exhibits to Osei's *Complaint* and *Response* demonstrate the actual crux of Osei's grade dispute. See Exs. A.4 and A.5 to the *Complaint* and Exs. C.3 and C.4 to the *Response*. These exhibits demonstrate that Osei missed Exam No. 1 and was not allowed to make up that exam pursuant to Dr. Krow's "no make-up [exams] policy." Rather, Dr. Krow, in his "professional judgment," factored the 200 possible Exam No. 1 points into the Final Exam (thus increasing the total number of points available to Osei on the Final Exam from 400 to 600 and making the Final Exam a significant portion of Osei's overall grade).[9] Osei performed poorly on the Final Exam (receiving only 288 out of 600 total points) and thus received a C for the course after all other components of his grade were accounted for by Dr. Krow. Osei's complaints about syllabi and Temple policy do not change this fact and do not support his due process claims.

---

[9] Osei's exhibits also demonstrate that Dr. Krow agreed to give Osei, as a final grade for the course, the higher of either: (a) his Final Exam grade or (b) his cumulative grade. Because his Final Exam grade was a "C-," Osei's received the higher cumulative grade, a "C."

10

Against these facts, the ruling in Regents of Univ. of Michigan v. Ewing, precludes Osei's due process claims. 474 U.S. 214 (1985). In Regents, the Supreme Court rejected a student's claim that his dismissal from a joint undergraduate and medical school program constituted arbitrary action, noting that:

> When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.

474 U.S. at 225; see also Mauriello v. Univ. of Medicine and Dentistry of New Jersey, 781 F.2d 46, 51 (3d Cir. 1986) ("[I]n an educational setting, a student bears a heavy burden in persuading the courts to set aside a faculty's judgment of academic performance.").

As demonstrated by the exhibits to the *Response* and *Complaint*, Osei cannot satisfy his burden here. Osei argues that Dr. Krow acted with some retaliatory animus and cites cases suggesting that "bad faith" on the part of the instructor give rise to due process violations. See *Response* at ¶¶ 105, 106, 114, and 115. However, that argument is factually impossible and does not agree with Osei's own exhibits. With the exception of one relatively benign email to Dr. Krow regarding group test scores, Osei's complaints and efforts to file a joint grievance against Dr. Krow did not arise until *after* his final Organic Chemistry grade was finalized and communicated to him by Dr. Krow. See Ex. C.5 to the *Response* (Osei's email regarding group test scores) and Exs. A.6 and A.7 to the *Complaint* (Osei's joint grievance emails). Therefore, because Dr. Krow used his professional judgment to determine Osei's grade, this Court should show deference to this academic determination and let the grade stand.

Lastly, though Osei questions the adequacy of the grade grievance procedures, this is yet an additional procedural safeguard that goes above and beyond what due process requires in the

11

academic grievance arena. See Disesa v. St. Louis Community College, 79 F.3d 92, 95 (8th Cir. Mo. 1996) (holding that even if plaintiff could show a factual dispute regarding whether a college failed to follow its own grievance procedures, plaintiff's procedural protection went beyond that required by the Fourteenth Amendment). The availability and exhaustion of these appellate/grade grievance procedures further demonstrates that Osei does not have a valid due process claim with respect to his Organic Chemistry grade.

### III.    CONCLUSION

Even accepting the allegations in Osei's *Complaint* and *Response* as true, Osei failed to allege a viable federal cause of action against Temple under either the First, Sixth, or Fourteenth Amendments or section 1983. Without original jurisdiction over this matter, this Court should decline to exercise supplemental jurisdiction and dismiss Osei's remaining shapeless state law claims of breach of contract and tort.

Dated: July 19, 2010         By: _____
                                 Michael J. Fortunato, Esquire
                                 Edward J. Heffernan, Esquire
                                 RUBIN, FORTUNATO & HARBISON, P.C.
                                 10 South Leopard Road
                                 Paoli, PA  19301
                                 (610) 408-2005/2021 / (610) 408-1869 (facsimile)
                                 mfortunato@rubinfortunato.com
                                 eheffernan@rubinfortunato.com

                                 Attorneys for Defendants:
                                 Temple University; Dr. Mia Luehrmann;
                                 Ms. Andrea Caporale Seiss; Dr. Robert J. Levis;
                                 and Dr. Grant Krow.

## CERTIFICATE OF SERVICE

I, Edward J. Heffernan, certify that true and correct copies of *Temple's Motion For Leave to File a Reply Brief In Support of Its Motion to Dismiss Plaintiff's Complaint* was served upon Michael Osei, Pro Se Plaintiff, by email and First Class U.S. Mail as follows:

> Michael Osei, Pro Se
> 3016 North Broad Street
> Philadelphia, PA 19132
> mikeosei@gmail.com

Dated: July 19, 2010

Edward J. Heffernan, Esquire
RUBIN, FORTUNATO & HARBISON, P.C.
10 South Leopard Road
Paoli, PA 19301
(610) 408-2021 / (610) 408-1869 (facsimile)
eheffernan@rubinfortunato.com